This morning, the first case on our call is Agenda No. 7. That's 127-968, People of the State of Illinois v. Kieran Sneed. Are you ready to proceed? May it please the Court, Counsel. My name is Joshua Scanlon, and I am here today representing Kieran Sneed in asking that this Court reverse the decision of the 4th District and either find that there was no jurisdiction for the State's appeal or affirm the trial court's order denying the motion to compel, or compelling Mr. Sneed to enter a pass code, would violate his inherent right against self-incrimination. There are four reasons that the 4th District's decision must be overturned in this case. First, there was no jurisdiction for the State's appeal where the trial court's order did not have any of the substantive effects necessary to confer jurisdiction. Second, the entry of a pass code is protected from compulsion by the constitutional right against self-incrimination. Third, the foregone conclusion exception should not be applied in the context of device decryption at all. And finally, even if it were applicable, the State has not shown the necessary knowledge of evidence within the phone that would be required to meet that exception. In this case, the State obtained a search warrant for the phones seized from Kieran and Elora Sneed and almost immediately moved to compel Mr. Sneed to produce or enter a pass code into one of those two phones. The State did this without seeking bank records, without seeking phone records, or making any other efforts to obtain the evidence it suggested it was seeking. Counsel, are they required to do that? Are they required to seek alternatives? Other methods of obtaining that evidence? They are not directly required to do that where they're obtaining a search warrant, but where the State is now claiming that this was the only means by which they could obtain the evidence that they were seeking, the record simply does not support that. That there were other potential means for the State to obtain that evidence is shown by the fact that Uml, Detective Uml in this case testified that there were, he would have to submit the phone to an outside agency and that they had used the Illinois State Police in the past. And where the only reason given for why the Illinois State Police might not provide that assistance was that they usually only provide that assistance in narcotics cases. That is not a lack of ability or means to search the phone, but a lack of will or a lack of, or a conscious choice simply not to utilize those means in this particular type of case and to restrict those efforts to those narcotics cases. Counsel, are you suggesting that the fact that there are alternative means goes to the question of whether or not it actually has the effect of preventing them from going forward with their case, the effect of, you know, suppressing evidence? Yes, Your Honor, that is correct. Because they lack the means, or excuse me, because they have alternative means, the search, the order denying the motion to compel did not have the effect of actually quashing the search warrant. This Court has explained in the context of evidence suppression that evidence is only suppressed where it is actually prevented from being presented to the trier of fact. And that orders that only limit the means by which that evidence is presented do not have that substantive effect of suppressing evidence. The same is true when it comes to the situation of the search warrant. The trial court's order here did exactly one thing. It prevented the State from forcibly extracting the pass code from Mr. Sneed. It did not prohibit the State from ultimately presenting any evidence that it might ultimately produce at trial. Counsel, tell me why you think the pass code, specifically why you think it's testimonial. Well, Your Honor, the pass code is testimonial in this case because, as the State concedes as well, because it conveys facts and information either explicitly or implicitly to the State that it did not otherwise have. Let me ask you a follow-on to that. If the defendant just typed in the pass code and then handed the phone to the police officer so that they could then open it, he wouldn't have said anything or communicated anything to the police officer. He would simply have performed an act that allowed them access to the phone. How is that testimonial? Your Honor, under the act of production doctrine, which is the framework that the State uses in order to attempt to compel Mr. Sneed to enter or produce the pass code, the act of handing over the information can be testimonial. But I'm giving you a hypothetical in which he doesn't hand over the information. He simply unlocks the phone and then gives the phone to them. So the information, which is specifically the numbers that keeps the phone locked, is still in his head. He just opens it and gives it to the police officer. How is that testimonial? Well, Your Honor, both options are testimonial. I know you're saying that. I'm asking you why. Because even the act of producing the phone, or, in other words, the act of producing the unencrypted contents of the phone, conveys Mr. Sneed's knowledge or possession, control over the contents of that phone. By producing the unlocked phone, by engaging in the act. So simply producing the unlocked phone, in your opinion, is testimonial? Yes, Your Honor. And in the same fashion that the physical act of picking up documents and handing them over to the State is considered testimonial in the manner that it was in the Fisher case. Does it matter if the State has agreed that they will not use the information or the fact that your client unlocked the phone at trial? Does that impact that analysis at all? No, Your Honor. As I believe it was Justice Stevens in the Hubble case explained, of course the State shouldn't be allowed to use that act of production as evidence against them. The problem is the derivative use of the items being produced, of what is actually being produced by that act of production. The State is utilizing these explicit or implicit communications of fact being conveyed through the act of production to advance its case and to prosecute the defendant. And in Hubble, Justice Stevens said, of course the State shouldn't be allowed to use that act of production directly. But they also cannot be allowed to use the fruits, essentially, of that act of production. I need some clarification here. Is the production that we're talking about here the passcode or is the production the contents of the phone? The production is the contents of the phone, Your Honor. And the reason for that is the production of the passcode, whether it be by revealing the passcode. Which is it? The production of the contents. In my question, what are you concerned about? The production of the contents or the production of the passcode? Which one? The production of the contents of the phone is the problem. And let me be more clear. The revelation of the code or the entry of the code serve as the act of production. Whereas the contents of the phone are what is actually being produced. Here, indeed, the State has conceded they are not seeking the revelation of the passcode itself. So the passcode itself is never being produced. What is being produced are the unencrypted contents of the phone, about which the State has provided no knowledge. So you're talking about when we get into the foregone conclusion analysis that our focus should be the contents of the phone versus the passcode? Yes, Your Honor. If the foregone conclusion exception is going to be applied, the only manner in which it can reasonably be applied is to the contents of the phone. The exception requires that the State show at the time it requested production that it knew of the evidence that it was seeking, specifically that it knew it existed, was in the defendant's position, possession, and was authentic. Focusing on the question, didn't the detective testify to the description and circumstances of the forged checks? Yes, Your Honor. The detective testified. He knew what was supposedly in the phone, right? No, Your Honor. Detective Ummel testified that he had received some information from, I believe it was the bookkeeper for Dairy Queen, that there had been a check that they believed to be forged. And that was all the information he obtained was from that bookkeeper of Dairy Queen. Because that check was supposed to have been deposited by mobile deposit, he thought it likely that there would be evidence on the phone. But he did not, in fact, know that there was anything on the phone. And what he testified to was that, in line roughly with the search warrant, he was hoping to find possibly a photo of the check or some text messages of some kind related to the transaction. But when the court asked him, he clarified that he was only hoping to find this information, but did not know for certain that it existed. And when defense counsel asked him if what he was doing was simply inferring from the fact that there was a mobile deposit, that there was possibly evidence on the phone, he confirmed, yes, he was inferring that there was the possibility of evidence on the phone. He did not confirm that he had specific knowledge at the time they were requesting compulsion that there was actually evidence within the phone. Is that required? I'm just thinking about when, you know, we have officers seeking a search warrant. What do they have to provide to the court? You know, what showing do they have to make in order for that to be allowed? I mean, is it 100% we know this is there? For the search warrant, no. It doesn't have to be that requirement for the search warrant. They only essentially have to show a reasonable likelihood that there's going to be evidence where they are seeking to search. So you're suggesting because we're talking about revealing this information on a cell phone that there's a higher standard for that? Not because it is on a cell phone, Your Honor, but because they are forcing Mr. Sneed to provide the information so that they can search it. Because it falls under the ambit of the Fifth Amendment and Mr. Sneed's right against self-incrimination, they have to show present knowledge. That is the test as it was established in Fisher. Focusing that on... Let me ask you this. If Mr. Sneed had, say the officers had a search warrant and he had something in a locked closet in his house and they came in and asked him to unlock the closet, would it be the same thing? Would he say, I don't have to unlock the closet because, you know, it would be self-incriminating? What would he be entitled to do in that situation? In that situation, Your Honor, he would not have to assist with the search. If the he would potentially have to unlock the so the difference here is what the State can force and what the State can't force. So Mr. Sneed... I'm trying to see what the difference is. It happens to be a cell phone that's locked. How is that different from information that's locked in a lockbox or a closet where the police have a legitimate search warrant that says you have to produce this information? I'm trying to figure out what the difference is and I'd like you to help me. Well, the difference, Your Honor, is primarily that the only way the State can go about unlocking this device or not the only way but the way that the State wishes to go about unlocking this device is to extract that information or extract that cooperation from Mr. Sneed's mind. If it were a physical object with the key was on him, they could take that key from him by force. If they have a search warrant, they could batter the door down if they needed to. But in this case... But they couldn't ask him to unlock the door? They could ask him to unlock the door, but the point of whether or not... Would he have to? You know, Your Honor, I'm not certain. I think it would depend on the circumstances of the case. But I think the distinction, the relevant distinction here is that Mr. Sneed is being forced to use what is in his mind. And the State cannot batter down the doors of his mind. They cannot simply extract the passcode from him by force like they could a key. And that is because his mind is inviolable. And the Fifth Amendment protects that territory. That is essentially what makes this testimonial. And when it comes to application of the passcode or, excuse me, application of the foregone exclusion, exception to the contents of the phone, the State's alternative of focusing on the passcode does not function properly within the structure of the foregone conclusion exception. Is the only case in Illinois is Spicer that addresses this issue? Is that correct? There's no other? Prior to this case, Your Honor, yes, that is correct. And it is the only case that has addressed this issue. And it has found, and the Court in Spicer did find, that this had to be applied to the contents of the phone if the foregone conclusion exception is going to be applied. If you find that with the foregone conclusion that the focus should be on the passcode, do you lose? No, Your Honor, because ultimately the State cannot make the established showing of knowledge as to the passcode either. And the reason for that is that the authenticity of the passcode at the time it is requested simply cannot be shown by the State. As the Court in Stahl admitted, the foregone conclusion doctrine cannot be seamlessly applied to passcodes. Indeed, it must be broken in order to accommodate passcodes as the object of production or as the object of the exception, because the authentication prong can only be met by accepting passcodes as self-authenticating. But this is circular and turns the analysis on its head. Permitting compulsion on this basis truly would allow the exception to swallow the privilege, as the Court in Commonwealth v. Davis feared, because the ability to authenticate is entirely dependent on the very act being compelled. In no other situation is that authentication permitted to occur based on the very act being compelled. It must be established by independent evidence. This ultimately gets back to why the foregone conclusion analysis or the foregone because this exception was conceived in the Fisher case in 1976, and it was applied to the production of tax records in that case. It was not created with modern technology in mind, and it was applied only to documents that had long been subjected to compelled production, such as financial and business records. Because it was applied to a narrow class of documents that were also specifically identified by the state. The implications of that production were necessarily limited. The same is not true where the act of production is entering a passcode into a digital device, because the device at issue itself is not simply a container, but a bottomless pit of information, unlimited by the state's request, because the state has not requested production of specific items of evidence, but rather broad access to the phone in its entirety. This is ultimately the same reason that the Hubble Court found that the foregone conclusion exception was inapplicable, where the government had sought numerous broad categories of documents and information about which it had no actual knowledge. And the Pennsylvania Supreme Court refused to apply it entirely, even in the situation where the defendant had admitted that the computer at issue was his, and not only he inapplicable, does that necessarily mean your client prevails? Yes, Your Honor. Because the act of production is testimonial, it is protected by the Fifth Amendment right. And the only way to obviate that right, the only path for that is the foregone conclusion exception. Where it does not apply, then the protection is not obviated, and Mr. Sneed cannot be forced to enter or produce the passcode for the phone. Counsel, you're almost out of time, and you haven't really spoken to the jurisdiction issue. Yes, Your Honor. Can you talk about that a little bit? Certainly. For there to be jurisdiction for the state's appeal, the order obviously has to have one of the specific effects in Supreme Court Rule 60481. Here, either suppressing evidence or quashing a warrant. In determining whether or not it has one of these orders, one of these substantive effects, this Court has explained that reviewing courts do not defer to the trial court or to the parties in making that determination. And here the Fourth District erred by deferring to the State's bare assertion that this order suppressed evidence. It did not. It did only one thing. It prevented the State from forcibly extracting the passcode from Mr. Sneed. By doing so, it did not suppress any evidence where the State had not identified any specific evidence that would be produced by the action. And it didn't prevent any of that possible evidence from being presented at trial. Neither did it invalidate the warrant where it only affected one means by which the State might access the phone, forcible compulsion of Mr. Sneed. Where the State has other means or could pursue other means to pursue their warrant, the trial court's order limiting one means does not substantively invalidate the warrant. The State is free to continue to pursue it. Because it has neither of these substantive effects, there should be no jurisdiction for the State's appeal. Where the Court's denial of compulsion, I see my time is up. I simply ask that this Court find in favor of my client. Thank you. Thank you very much, Counsel. Counsel for the appeal. By the way, I can't help but noting, welcome back, Mr. Schneider. You've had busy days. Thank you, Your Honor. Good morning. May it please the Court, Counsel. I'm Assistant Attorney General Josh Schneider, again, on behalf of the people of the State of Illinois. I'd like to pick up in response to Justice Cunningham's question, because I think that really gets at the heart of the Fifth Amendment issue presented in this case, which is for the purposes of the Fifth Amendment, a phone is simply a container. It is no different from a briefcase or a safe or a car, a storage unit. It's a container that may or may not have something inside it. And the question when, under the Fifth Amendment, a person can be compelled to unlock a container so that police can execute a warrant to search its contents turns on the application of the foregone conclusion doctrine, which says that when you compel someone to perform an act, any testimonial statements implicitly made by the physical performance of that act have to already be foregone conclusions. And this becomes really clear when we take a step back and just look at the act itself, taking away the element of compulsion. Just say, what does the act actually say? So let's say that we see a person unlock a door. What is that person implicitly stated by unlocking the door? What they've said is, I have the ability to unlock this door. And courts, consistent with the analytical framework provided in Fisher and Hubble, have broken that statement down into its three components. There is a key that unlocks this door. I have that key. And the key that I used is the key that unlocks that door. In other words, the key that I used is authentic. And so if you compel someone to unlock a door, those are the three testimonial statements that you are compelling them to implicitly make, the three facts that you are compelling them to assert. And therefore, those are the three facts that have to be foregone conclusions. Now let's take a step over from the physical to the digital. Now we're looking at some sort of digital container, an iPad. If a person unlocks an iPad, they enter the key. When I say key, it could be the passcode, a password, drawing the little design that opens it, some sort of biometric code. They have a key. If you see a person unlock an iPad, they have told you, I have the ability to unlock this iPad. Again, broken down into components, the key or passcode that unlocks this iPad exists. I have it, and I used it to unlock this iPad. So those are the three testimonial statements that have to be foregone conclusions to compel a person to perform that act. In this case, were a defendant compelled to unlock his phone, he'd be admitting, he'd be compelled to admit the fact that he has the ability to unlock that phone. Broken down into those three components again, that the passcode to his phone exists, that he has it, and that the passcode he entered was the passcode that unlocks his phone. So those are the three facts that have to be foregone conclusions. And on this record, those three facts are a foregone conclusion. May I just quickly ask, you agree then that, however we look at this, that this is all testimonial? It is only to the extent that an act compels an assertion of fact or belief that is necessary to perform the act. So, for example, in Fisher, the court noted that if you compel someone to perform a handwriting exemplar, right, if you say write this out, that person is, by complying with that order, admitting that they know how to write. That is a factual assertion that they are implicitly making. So it is testimonial in that limited sense, but which Fisher said is not sufficiently testimonial to trigger the Fifth Amendment privilege against compulsory self-incrimination, because we already know that. So that has no, it may have some testimonial content, it has no testimonial value to the state. And that is really what the foregone conclusion part of the foregone conclusion doctrine means, is does this statement of fact that you are compelling someone to make by performing an act, are you relying on that in any way? And that is why it doesn't require, as the defendant put it, breaking the doctrine to apply it to the context of encrypted devices, because we are not relying on the implicit statement of the person unlocking the device, this is the passcode that unlocks the device, to determine that that is the case. And it becomes very clear, if you imagine, rather than the person implicitly making those statements, if the person was explicitly making those statements, if he was narrating. So imagine that defendant was compelled to unlock his phone. Detective Ummel takes the phone, he hands it to defendant, he says, all right, pursuant to this court order, now unlock your phone. Defendant turns around and he says, there is a passcode that unlocks this phone, I know the passcode and I am now entering the passcode. He does something and then he hands the phone back to Detective Ummel. Detective Ummel can now verify whether or not the passcode was authentic, in other words, whether or not the passcode entered was the passcode that actually unlocks the phone, without taking defendant's word for it. He doesn't have to rely on the truth of that implicitly asserted testimonial fact, because he can look at the phone. And if the phone is unlocked, that means that the password that was entered was authentic. If it's not unlocked, that means that it wasn't authentic. But does it also prove, or tend to prove at least, that this is the defendant's phone, the contents on the phone are in fact his, and that he has control over the material? No. So all that we're compelling is the actual testimonial statements implicit in that action. The fact that a person might have reason to think things based on that, that it might have some evidentiary value, is a separate question. So let's say that you see at trial, would you use, introduced before the jury, defendant here had a phone, he knew the password, he unlocked it, therefore the contents on the phone are his. No, I think that, I don't believe there's any precedent on this, but I believe that that probably should not be permissible at trial, because then it's as though you had compelled someone to say anything else and it would be barred. But the contents of the phone is irrelevant to the act of unlocking the phone. And again, if we take a step back and say if you see someone unlock a door, that person is admitting they have the ability to unlock that door,  right, they're not saying that they know what's behind the door, they're not saying that they own what's behind the door, they're not saying that there's drugs behind the door or anything else. If defendant unlocks his phone, he is admitting he has the ability to unlock the phone. He's not telling us, based on that action, we don't know anything about what's on the phone. We might have guesses. Is there evidence to be drawn from that, though? If I unlock a door and the police end up in there and they find a bunch of stolen property, the fact that I have the key and that I opened it, isn't there an inference to be drawn there? There is an inference to be drawn, but that inference is independent from the testimony implicit in the action, because that testimony is already a foregone conclusion. So if defendant unlocks his phone and we find all kinds of incriminating evidence of the mobile deposit of forged Dairy Queen paychecks, the inference is drawn from the fact that the phone was on his person and that he identified the phone as his in court documents. It is not drawn, for our purposes, from the compelled act of unlocking the phone. That's why the foregone conclusion, part of the foregone conclusion doctrine, has to do with is the State able to make any additional use of this testimony, or do they already know that such that the fact that you're saying it to them implicitly by performing the act has no value. It doesn't add anything, as Fisher put it, to the sum total of what the State already knows. And here the State already knows that defendant, that there is a passcode to the phone because the phone is passcode protected. They can't get in without a passcode. They already know that defendant has the passcode because he has effectively identified the phone as his independently of the assault compelled act, and they already have the ability to authenticate that passcode after it's been entered. It doesn't tell you anything about what's in the phone. The contents of the phone are irrelevant. The act of unlocking the phone is identical, whether the phone is chock full of incriminating evidence or has nothing on it at all. And it becomes very clear if you think of who's unlocking the phone. Let's say that it was a five-year-old child. Lots of children now know the passcode to their parents' phones. They play games on them and so on. If defendant happened to have a five-year-old child and that child unlocked the phone, that would tell us that there is a passcode to the phone, the child knows it, and the child used it to unlock the phone. It would not tell us that the child possesses any evidence that may be on the phone, that the child knows what texts were or were not sent from the phone. It just says, this person has access to this phone. And for that reason, the Indiana Supreme Court decision in Sayo is incorrect because it focuses not on the act that's being compelled, but the evidence that might be discovered after that compelled act is performed. But that's the same for any compelled act. If you compel someone, as the U.S. Supreme Court said in a bout night, if you compel someone to produce the child Maurice, right, Maurice may be incredibly incriminating. He may say all kinds of incriminating things. His appearance may be incriminating. But the production of Maurice simply admits that the person producing Maurice, that Maurice exists, that person has possession or control of Maurice, and here is Maurice. As long as the State knows that Maurice exists, they know that the defendant has possession or control of Maurice, and they have the independent ability to authenticate, in other words, identify Maurice independent of the fact of production, that's all that's required. The fact that Maurice may be filled with all kinds of incriminating contents in some way is just irrelevant under foregone conclusion doctrine. And that's the same for anything else. If we compel someone to unlock, as the analogy goes, to produce the key to a strongbox, the fact that the strongbox may have incriminating evidence is simply irrelevant to the analysis because the thing they're being compelled to do is produce the key. And that's permissible under the Fifth Amendment, as long as the implicit testimony is already a foregone conclusion. Defendants argued the foregone conclusion should not apply in this context, as, of course, contrary to the overwhelming consensus of courts to address this question. Even the courts that disagree about what facts have to be foregone conclusions agree that unlocking encrypted devices is subject to foregone conclusion analysis. The only case that has not is this Davis case out of Pennsylvania, which says that documents are somehow unique under the Fifth Amendment. But that is certainly not consistent with how the U.S. Supreme Court then has talked about the foregone conclusion doctrine. Again, in Bauknecht, they expressly said, well, you can't invoke the Fifth Amendment when producing Maurice because the facts that would be implicitly testified to are already foregone conclusions. And Maurice plainly was not a document. Sotomayor, explain to me why the Sayle case was wrongfully decided. Sure. Sayle was wrongly decided because it did not focus on the actual act that was being compelled. It focused on, well, what will this act allow police to then get access to? And what a person is being compelled to do when they unlock a phone is just being compelled to enter the code, enter the key. But aren't you really interested in what's on the phone? That's why they're asking them to do it. That's certainly true. In the same way that if the State were to compel someone to produce the key to a strongbox, in Justice Stevens's analogy, that the reason that they want the key is not because the key has independent evidentiary value. It's that they want to be able to look inside that strongbox. And as long as they have a warrant to do so, that's fine. But the contents of the strongbox are irrelevant to whether we have the authority under the Fifth Amendment to compel someone to produce it. Now, there may be Fourth Amendment concerns. Maybe there's a probable cause to believe that there's incriminating evidence inside the strongbox. Or maybe the scope of the search authorized by that warrant is not reasonable in light of the probable cause. But that's a Fourth Amendment concern. And the Supreme Court has been very clear in Fisher that the Fifth Amendment does not protect privacy as the Fourth Amendment does, except incidentally to the extent that it prevents someone from being compelled to incriminate themselves, and that may in some cases prevent them from being compelled to produce private information. But the core of the Fifth Amendment is compulsion. It's protection. A privilege against compulsory self-incrimination. And so that's why the size of the container does not matter. This is what I've sort of been thinking of as the big box argument. The reason that you cannot compel someone to unlock a phone, unlike being able to compel someone to unlock a briefcase, is that it's a big box. It contains lots of information. But the amount of information contained in a container is irrelevant to what the act of unlocking it actually says is true, the facts that are communicated. And this becomes very clear, again, with another analogy. If you imagine that before a defendant had been arrested, he took his phone and he took the memory card out of his phone. That memory card, let's imagine, has all of the information that's on his phone. Right? However many megabytes of information, call data, all that stuff. He takes that and he puts it in a briefcase. And he locks the briefcase. And now the police arrest him and they take the briefcase. They get a warrant to search the briefcase. They have probable cause to believe there's evidence in that briefcase. But it's a James Bond-style briefcase. If they try to force the lock, it'll destroy the contents. That briefcase is exactly as big a box as the phone was. It contains literally exactly the same information as the phone. And yet it does not feel at all odd that the State could compel him to produce the key as Justice Stevens said it could. That is, the size of the box is simply irrelevant. Again, that's a Fourth Amendment concern, that the scope of the search is going to be in some way overbroad or improper. And that's governed by the warrant requirement. And there's been no challenge to the propriety of the warrant in this case or the scope of the search it authorizes. I'd like to briefly address a point that a defendant made in his brief about the possibility that this Court could, notwithstanding the Fifth Amendment's privilege to not protect this, that perhaps there's some greater protection under Article I, Section 10 of our Constitution, because this Court has made clear in cases like Hanrahan and Rossello and Rolfingsmeier that Article I, Section 10 and the Fifth Amendment proceed in lockstep. And what that means is, as goes the Fifth Amendment, so goes Article I, Section 10, because that was the intent of the drafters when they drafted or when they adopted the 1970 Constitution. It is not a snapshot of the substantive law at 1970, and any subsequent changes don't matter. The reason we know that that's how lockstep works is, first, that's what lockstep means. It means that you're moving together. But also, if we look at Rossello, that was considering, does Article I, Section 10, provide different protections than a protection, the limit recognized in a 1998 U.S. Supreme Court case, where the Supreme Court had said that fear of prosecution in a foreign jurisdiction does not trigger the Fifth Amendment privilege against self-incrimination. And this Court said that that new precedent, obviously 1998 is after 1970, that new precedent governed its analysis of Article I, Section 10 because there was no substantial basis to believe that there was to depart from that lockstep approach. There's no basis in the text because this Court has made clear that the text is different in semantic sense, not substance. It's virtually identical. And even the difference, the Fifth Amendment has be a witness, compelled to be a witness against oneself. Our Constitution has compelled to give evidence, but it's very clear under our Constitution that the evidence that you're not, you cannot be compelled to give is testimonial evidence, because that's why, even under our Constitution, you can be compelled to give a DNA sample or be compelled to participate in a lineup and subject one's body to view. Even though that is giving evidence, it's not testimonial evidence in this Court. It's not privileged under either of these coextensive provisions. But you're saying this is testimony? This is testimonial, but not sufficiently testimonial or, put differently, not testimonial in the sense that triggers either provision. It's testimonial only within the very limited sense of the foregone conclusion doctrine. Counsel, what about jurisdiction? Sure. So turning to jurisdiction, there was jurisdiction to review this order because the order did have the substantive effect of both quashing the search warrant and because it made it impossible for the Clinton police to affect that search phone. And it also had the effect of quashing or suppressing any evidence that was on that phone. Because if they can't discover it, then they can't present it. What about opposing counsel's argument that there are other means by which they could get this evidence? I think the problem with that argument is the word they. Because there's no question that Clinton police do not have the ability to unlock this phone. Detective Ummel was very clear. So if the law enforcement agency that's actually involved in this prosecution can't do it, the fact that some other agency somewhere else that has no obligation to be involved in this, the fact that Cook County may have the resources to unlock a phone does not mean that every other county in the state is therefore precluded from appealing from an order denying them an order compelling someone to unlock a phone. Because while someone in the state, where state is redundant to encompass every state agency in Illinois and potentially, I guess, the federal, because perhaps the FBI might be able to do it and we could ask them. And they, of course, are not obligated to do so. But as long as someone in the state could do it, that means that no one in the state can show that something has the effect of suppressing evidence or quashing a warrant. Similarly, if you think of a witness is unavailable, right? An unavailable witness is prior statements under Rule 804. And they said, we cannot find him. We've exhausted our ability in DeWitt County to find this witness. The fact that if the state of Illinois at the state level and with the cooperation of all of the counties running a statewide manhunt and perhaps with devoting resources to a nationwide manhunt might be able to find that witness does not mean that the witness is not unavailable for the purposes of that prosecution. The state in a criminal prosecution is really the law enforcement agencies involved in that prosecution. It's not every organ of the state wherever it might be. And so the fact that the Clinton County Police could not get into this and were unaware of anyone who would be available to help them was sufficient to show that this had the effect of quashing that warrant and suppressing the evidence on the phone. And we would note that Spicer found that the, although it disagreed on the application of the foregone conclusion doctrine, it did find there was jurisdiction. And there has since been a case addressing both the Fifth Amendment question and the jurisdictional question in, out of the Fourth District in Hollingsworth, which is non-precedential but is more indication of how the appellate court requires some guidance to clarify this split. So if there are no further questions for those reasons and the reasons in our brief, we ask that this Court affirm the judgment of the appellate court. Thank you. Thank you very much. All right. Your Honors, I'd like to just address maybe three or four things that the state brought up. And I'll start with just the jurisdiction argument that the state was making most recently. The idea that some other entity that it should be limited only to the ability of the Clinton Police Department suggests that the Clinton Police Department must, would be allowed to do, you know, anything that it doesn't have the immediate ability to do. I doubt very much that the Clinton Police Department by itself without resort to another entity has the ability to do DNA or other physical testing on, you know, those kinds of evidence. Reaching out to other agencies is a regular practical part of that. And in this case particularly, Detective Uml testified that Illinois State Police are often utilized. And, again, the only reason that they wouldn't be utilized here is that they focus their efforts on narcotics cases. This, again, is not a lack of an ability but a lack of will to do, to make that effort. And so shows the fact that there is no means. In addition, the idea that they wouldn't be able to access the phone not being shown on the record shows why in the same manner that the court in Lee, the Fifth District in the Lee case, explained where the video statements of minor witnesses were excluded but the state could still present the live testimony. The state argued, well, live witnesses could freeze up or they might become unavailable before trial. And Lee court said, no, that doesn't change the substantive effect of the order. That's too speculative as to whether or not the state's going to be able to present that evidence at trial. The same is true here. It's entirely speculative that the state has no other means to access the phone in this case. And to say that that changes the substantive effect of the trial court's order is simply inaccurate where it only limited this one means by which the state could pursue that warrant. Going on to the merits of the trial court's order, the state argues that the limits of what the implications are of entering the pass code or producing the pass code, but that limitation on what is implicit in that act is really an artificial limitation on what can be implied from the act of unlocking the phone. Because as the Seo court explained, as the court in Davis was concerned with, the act of unlocking the phone implies not just the ability to unlock the phone, but the possession, control, agency over the information within the phone, the data within the phone that the state is actually after. And to limit that artificially to the most basic implications is really just an artificial way of ignoring everything else that can be implied by that action. And in particular, this is significant because of how the foregone conclusion exception and how the act of production doctrines came into being in the Fisher case. There, the state was seeking specifically identified tax documents, and they had independent evidence of those tax documents through the third-party accountants who created them. It's relevant to remember that the other issue that the Fisher court was deciding was attorney-client privilege, and the Fifth Amendment right against self-incrimination is often referred to as a privilege. So when you look at how they created the foregone conclusion exception, it operates very much the same way as a privilege, where in the attorney-client privilege, information or statements of the defendant to the attorney are protected so long as he has not revealed that information to a third party or made those statements in the presence of a third party, at which point that privilege is waived. The foregone conclusion exception operates much the same way, where the State must have independent evidence from a third party that is not entirely independent of the act being compelled. Here, in order to produce the passcode or in the entry of the passcode, the State is not using knowledge or evidence that is independent of that act of production. It doesn't have a third party who can authenticate the passcode or provide information about the passcode, like the documents that were produced in Fisher or the financial or business documents that have been produced in every other kind of case in which the foregone conclusion exception has actually been applied. They have no independent evidence, and so the evidence that they are relying on to obtain the passcode or to obtain entry into the phone is entirely dependent on the act being compelled. As far as whether or not Detective Amol or, I should say, the State produced evidence of the knowledge of what is within the phone, I would like to address the fact that the trial court found that the State had not produced evidence of the existence, possession, and authenticity of the evidence within the phone. And those factual findings by the trial court are not against the manifest weight of the evidence and are due deference in determining whether or not the State has met that knowledge as it applies to the contents of the phone. And the State has really abandoned any argument at this point that it has shown knowledge of what was within the phone in order to meet the requirements of the foregone conclusion exception. Seeing no further questions, Your Honor, I would simply ask that this Court overturn the decision of the Fourth District and either find there is no jurisdiction or affirm the trial court's denial of the motion to compel. Thank you. Thank you very much, Counsel. In this case, number seven, number one through seven, nine, six, eight, people of the State of Illinois, this is Karen Sneed, is taken under advisory.